**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

APACHE APARTMENTS OF OWATONNA, a Limited Partnership, et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

**Case No. 96-700C**
**(Judge Block)**

## PLAINTIFFS' MOTION FOR STAY

Pursuant to Rules 1 and 7(b) of the Rules of the United States Court of Federal Claims, plaintiffs hereby move for a stay of these proceedings pending the outcome of the closely-related – and now consolidated – cases of *Cienega Gardens v. United States*, No. 94-1C and *Chancellor Manor v. United States*, No. 98-39C, and/or the pending Federal Circuit appeal in *Independence Park v. United States*, File No. 94-10001 (Judge Lettow), *appeal docketed*, No. 05-5034, 05-5035 (Fed. Cir. Dec. 28, 2004), a case closely related to *Cienega Gardens*. Alternatively, plaintiffs propose that further proceedings in this case be suspended pending the decision of the Court of Federal Claims in *Chancellor Manor* and *Cienega Gardens*, so that the parties can determine the appropriate course of further proceedings in light of the decision in those consolidated cases.

## Background

Defendant initially moved the Court to stay this action pending the resolution of a probable appeal in *Cienega Gardens, et al. v. United States*, No. 94-1C (Fed. Cl.). (Def.'s Mot. For Stay, No. 96-700C (Fed. Cl. June 9, 1997).) Defendant argued that a

stay of proceedings "would further the interests of efficiency and economy for the Court and the parties." (*Id.* at 1.) According to defendant, the *Cienega Gardens* appeal "would address claims substantially similar to the claims raised by" the *Apache Apartments* plaintiffs, "including nearly identical breach of contract and takings claims, and would constitute controlling authority as to the resolution of many of the issues likely to be raised in dispositive motions" in *Apache Apartments*. (*Id.* at 2.)[1]

By Order dated December 16, 1997, the Court noted that the *Cienega Gardens* matter, then before the Federal Circuit for the first time, involved legal issues similar to those in the instant litigation and, when resolved by the Federal Circuit, would "be controlling precedent." (*Apache Apartments of Owatonna, et al. v. United States,* No. 96-700C (Fed. Cl. Dec. 16, 1997) (order granting suspension).) The Court noted that the same issues also were before it in *Greenbrier (Lake County Trust Company No. 1391, et al.) v. United States,* No. 96-323C, a case involving housing owner plaintiffs similarly situated to the *Apache Apartments* plaintiffs. (Order of Dec. 16, 1997 at 2.) The Court therefore suspended all *Apache Apartments* proceedings pending further dispositions in the related *Greenbrier* case. (*Id.*)

On December 7, 1998, the Federal Circuit issued its opinion in *Cienega Gardens* (162 F.3d 1123) vacating the trial court's judgment in favor of plaintiffs on their breach of contract claims and remanding the case for further proceedings regarding plaintiffs'

---

[1] The Court ultimately issued a decision in another related matter, *Sheyenne Dev. v. United States,* No. 96-755C (Fed. Cl. July 3, 2002), dismissing takings claims that are substantially similar to those of the plaintiffs in *Apache Apartments*. In its opinion, the Court relied heavily on the earlier decisions of the Court of Federal Claims in such closely-related cases as *Chancellor Manor v. United States*, 51 Fed. Cl. 137 (2001). Among other things, the Court found that the *Sheyenne* plaintiffs' regulatory takings claims were "identical" to those asserted in *Chancellor Manor* (slip op. at 8).

takings claims. In their subsequent respective status reports to this Court, defendant requested that the stay of this action continue both with respect to plaintiffs' breach of contract claims (pending resolution of a petition for *certiorari* filed in *Cienega Gardens*) and to plaintiffs' takings claims (pending the then pending appeal to the Federal Circuit in *Greenbrier*) (Fed. Cir. No. 98-5111); the plaintiffs contended that the stay should be lifted because their breach of contract claims raised issues not addressed in *Cienega Gardens* or *Greenbrier*. In its Order dated August 9, 1999, the Court concluded that "continuation of the suspension will benefit all concerned." (Order of Aug. 9, 1999 at 2.) The Court noted in part that, while some plaintiffs in this case may not be in the exact same circumstances as those in *Greenbrier,* a decision by the Federal Circuit in that case "will likely influence if not control the resolution of plaintiffs' taking claims." (*Id.*)

Following the disposition of these then pending proceedings in *Cienega Gardens* and *Greenbrier*, the plaintiffs in *Cienega Gardens* filed a second appeal to the Federal Circuit from an order in that case regarding takings issues.[2] *Cienega Gardens*, 46 Fed. Cl. 506 (2000). Noting that the decision of the Federal Circuit in the second *Cienega Gardens* appeal may streamline the issues presented to the Court in this case, plaintiffs requested on September 17, 2001 that the stay of proceedings previously imposed by the Court remain in effect "until the Federal Circuit issues a decision in *Cienega Gardens*

[2] The plaintiffs in both the *Chancellor Manor* and *Sheyenne Development* cases also appealed takings issues to the Federal Circuit. During the course of these appeals, defendant moved for a suspension of the *Sheyenne* appeal pending the outcome of the *Chancellor* appeal, noting that "both cases include virtually the same issues." (*See* Def.-Appellee's Mot. to Suspend Proceedings at 2, No. 02-5173 (Fed. Cir. Feb. 14, 2003).) The Federal Circuit granted defendant's motion for a stay, noting that the two cases "involve many of the same issues." (*See* Order, No. 02-5173 (Fed. Cir. Mar. 31, 2003).) Moreover, the Court recently has suspended *Sheyenne* in light of the pending proceedings in *Cienega* and *Chancellor*. (*Sheyenne Dev. v. U.S.*, No. 96-755C (Fed. Cl. Jan. 28, 2005) (order granting suspension).)

and all avenues of appeal in that case are resolved." (Pls.' Status Report, No. 96-700C (Fed. Cl. Sept. 17, 2001) at 3.) Plaintiffs further requested that, following the final resolution of *Cienega Gardens*, they be permitted to engage in discovery. (*Id.*) As noted by the Court in a subsequent Order, defendant did not oppose this motion. (Order, No. 96-700C (Fed. Cl. Sept. 21, 2001).) Although the Federal Circuit issued its decision in *Cienega Gardens* on September 18, 2001, one day after plaintiffs' request for a continuation of the stay, the Court ordered in part that proceedings herein remain stayed pending further Order of the Court. (*Id.* at 2.) The Court further ordered the parties to report as to whether proceedings herein "should remain stayed pending final resolution of the *Cienega Gardens* litigation . . . ." (*Id.*)

On October 19, 2001, the plaintiffs reported to the Court that "[o]nly after *Cienega Gardens* reaches a final disposition and discovery in this case is completed will the Court be in a position to rule on defendant's motion for summary judgment." (Pls.' Status Report, No. 96-700C (Fed. Cl. Oct. 19, 2001) at 2.) ". . . [S]o long as the *Cienega Gardens* decision remains unresolved and the legal landscape governing plaintiffs' claims remains unsettled, it would be an unnecessary burden and undue commitment of resources to require plaintiffs to engage in the extensive analysis necessary to marshal the genuine issues of material fact surrounding plaintiffs' contract and taking claims." (*Id.*) "Thus, until all avenues of appeal are foreclosed in *Cienega Gardens* and the case reaches a final resolution before the trial court on remand, the reasons for imposing the stay in the first instance will remain relevant." (*Id.*)

Noting only that plaintiffs had not stated that any portion of their takings claims would be controlled by any final decision on the takings claims in *Cienega Gardens*,

defendant opposed plaintiffs' request for a continuation of the stay. (Def.'s Status Report, No. 96-700C (Fed. Cl. Oct. 22, 2001).) Plaintiffs have consistently maintained, however, that a stay of proceedings regarding their takings claims is warranted because they involve issues substantially similar to the takings claims involved in both *Cienega Gardens* and *Greenbriar*. As further maintained by plaintiffs in its subsequent status report dated December 7, 2001, "[r]egardless of how the court proceeds in *Cienega Gardens*, however, it is clear that the final outcome, following any further appeals, will directly impact the claims at issue here." (Pls.' Resp. To Def.'s Status Report, No. 96-700C (Fed. Cl. Dec. 7, 2001 at 5).) Moreover, plaintiffs argued that "the *Cienega Gardens* litigation ultimately will reach a final resolution on the merits of the taking claims at issue, and that final decision will have a direct bearing on the merits of the taking claims presented here." (*Id*. at 6.) Pursuant to the Court's Order dated November 6, 2001, the proceedings in this action remained stayed pending further Order of the Court. (Order of Nov. 6, 2001 at 2.)

On June 12, 2003, the Federal Circuit issued its decision in the closely-related case of *Cienega Gardens v. United States*, 331 F.3d 1319 (2003) along with its decision in the closely-related case of *Chancellor Manor*, 331 F.3d 891 (2003). In both cases, the dismissal of plaintiffs' takings claims by the Court of Federal Claims was reversed, and both actions remanded for trial. Following the disposition of these appeals, the parties herein did engage in a period of fact discovery. Recent scheduling orders have extended the time for completing expert discovery from December 23, 2004 to May 23, 2005. Since the commencement of this discovery, however, in a case closely-related to *Cienega Gardens*, the government and plaintiffs filed cross-appeals in the Federal Circuit relating

to a final judgment in favor of plaintiffs on their takings claims in *Independence Park v. United States*, File No. 94-10001 (Judge Lettow), *appeal docketed*, No. 05-5034, 05-5035 (Fed. Cir. Dec. 28, 2004).

In addition, following the remand of *Cienega Gardens* and *Chancellor Manor*, those closely-related cases were consolidated for trial. The trial, involving all three plaintiffs in *Chancellor Manor* and five plaintiffs in *Cienega Gardens*, commenced on November 8, 2004 and concluded on December 17, 2004. Post-trial briefs in the consolidated trial will be submitted on February 23, 2005 and March 11, 2005, with closing arguments scheduled for March 23, 2005.

**Discussion**

Plaintiffs submit that the interests of judicial economy favor staying further proceedings in this case pending final resolution of the consolidated cases of *Chancellor Manor* and *Cienega Gardens*. The Court's inherent power to stay proceedings lies in its sound discretion. *Landis v. North Am. Co*., 299 U.S. 248, 254 (1936); *Cherokee Nation v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997). A stay is appropriate where it will promote the "interest of judicial economy and avoid duplication of effort and the possibility of inconsistent results." *Cooley v. United States*, 219 Ct. Cl. 587 (1979).

The claims and allegations in this case continue to mirror those of the plaintiffs in the related cases of *Chancellor Manor* and *Cienega Gardens*. All three cases involve the same contract forms, the same alleged property interests, and the same legislative actions alleged to have effected takings of the plaintiffs' property interests. As a result, the upcoming decision in the consolidated *Chancellor Manor* and *Cienega Gardens* cases, and any subsequent decision on appeal to the Federal Circuit, will have a major impact on

the issues and claims at issue in this case. Those decisions, as well as the impending Federal Circuit decision in *Independence Park*, will resolve many issues purely legal in nature, including issues related to the nature of plaintiffs' property interests, the objective and/or subjective reasonableness of plaintiffs' intentions regarding prepayment, the character of the defendant's action, and the duration of the temporary takings of the properties at issue.[3]

The latter issue alone – the duration of the temporary takings periods – will involve such difficult legal questions as which of the following dates/occurrences constitute the termination of the temporary takings periods at issue in all of these cases: (i) the signing of a Use Agreement; (ii) the termination of a Use Agreement and the maturation of any reamortized mortgage pursuant to said Agreement; (iii) the cessation of the statutory restrictions at issue and when they ceased (*e.g.*, "HOPE + 60"); (iii) the date upon which prepayment could have been accomplished following the cessation of statutory restrictions (*e.g.*, a reasonable period for obtaining a conventional mortgage loan). The legal question of which of these end dates is appropriate will dramatically affect, among other things, the calculation of just compensation in this case.

While the *Chancellor Manor* and *Cienega Gardens* cases have completed trial and will be fully briefed and argued in the near future, this case is far from completing its discovery. For example, expert discovery is scheduled to continue through much of May

[3] The eight properties at issue in the recent trial in *Chancellor Manor* and *Cienega Gardens* cover a wide variety of factual circumstances that pertain to the properties at issue here. For example, those cases include (1) both properties in the 236 program and properties in the 221(d)(3) program, (2) both plaintiffs that signed Use Agreements under Title II and plaintiffs that signed Use Agreements under Title VI, and (3) both plaintiffs that prepaid following the passage of the HOPE statute and that remained in the program as a result of having previously signed a Use Agreement.

2004 and will involve extensive expert reports and expert depositions. Since the discovery schedules were set in this action, plaintiffs' counsel have learned much about the variety of issues, including those involving just compensation, in the closely-related cases. They also have learned how similar those issues are to those in this case, and how much time and effort will be required to complete expert discovery in this case. Much of this time and effort would not be required if they knew what the answers are to some of the difficult legal questions that will be resolved by pending proceedings in these closely-related cases.

Thus, by the time that discovery, trial, and post-trial proceedings are completed in this case, it is certain that the *Chancellor Manor* and *Cienega Gardens* cases will have reached a trial court decision and quite possible that any appeal will be completed. Thus, the parties at the very least would be able to avoid a great deal of expense and streamline remaining expert discovery and trial in this matter by awaiting the results in the closely-related cases that have progressed much farther. Indeed, awaiting the results in those cases may well eliminate the need to try this case twice in the event of inconsistent decisions. For example, the answer to the question whether the reasonability of investment backed expectations has a subjective element will control the nature of the evidence and the very identity of witnesses required at trial (*e.g.*, if a subjective showing of intent is required as of the time that the investment at issue is made, plaintiffs will know whether it is required to prove such original intent).

Based on these very concerns, the Court recently suspended the closely-related case of *Sheyenne Development* pending the conclusion of briefing and argument in the closely-related *Cienega Gardens* and *Chancellor Manor* cases. (*Sheyenne Development*

*v. United States*, No. 96-755C (Fed. Cl. Jan. 28, 2005) (order granting suspension).) Plaintiffs assert that a stay should be imposed in this case as well to promote the orderly and efficient resolution of these related cases.

**Conclusion**

Accordingly, in order to save time and effort and proceed with this case in the most logical and efficient manner, and in order to avoid duplication of effort and potentially inconsistent results, plaintiffs request that this case be stayed pending the final resolution of the *Chancellor Manor* and *Cienega Gardens* cases and/or the pending Federal Circuit appeal in *Independence Park.* Alternatively, plaintiffs propose that further proceedings in this case be stayed pending the upcoming decision of the Court of Federal Claims in *Chancellor Manor* and *Cienega Gardens*, so that the parties can determine the appropriate course of further proceedings in light of the Court's holding in those consolidated cases.

Dated: February 22, 2005

**Filed Electronically**

Respectfully submitted,

**s/ Jeff H. Eckland**

Jeff H. Eckland
Mark J. Blando, Of Counsel
ECKLAND & BLANDO LLP
700 Lumber Exchange
10 South Fifth Street
Minneapolis, MN 55402
Telephone: (612) 305-4440
Telecopy: (612) 305-4439

*Attorneys for Plaintiffs*