**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

APACHE APARTMENTS OF OWATONNA, *et al*.,

Plaintiffs,

**Case Nos. 96-700C**
**(Judge Block)**

v.

THE UNITED STATES

Defendant.

---

**PLAINTIFFS' MOTION TO STAY TRIAL**

The Federal Circuit will soon be considering the Government's appeals in two matters that are nearly identical to this one. The Federal Circuit's disposition of these cases – *Cienega Gardens v. United States,* No. 94-1C and *Chancellor Manor v. United States,* No. 98-39C – will unquestionably influence, if not dictate, the result of this proceeding. Accordingly, the time and resources of this Court and of the parties will be best used by staying this case pending the outcome of the appeals in *Cienega Gardens/Chancellor Manor.*[1]

**BACKGROUND**

This Court recognized in its May 2, 2005 Order that "the present case is closely related" to *Cienega Gardens/Chancellor Manor*. *See Apache Apartments of Owatonna v. United States*, No. 96-700C, slip op. at 2 (May 2, 2005) ("Order"). At that time, the Court had not issued the consolidated *Cienega Gardens/Chancellor Manor* decision that is now on separate appeals

---

[1] Defendant has declined plaintiffs' invitation to stipulate to such a stay.

before the Federal Circuit. *See Cienega Gardens v. United States*, 67 Fed. Cl. 434 (Fed. Cl. 2005) (Lettow, J.). In response to plaintiffs' motion for a stay during this case's discovery period, this Court ruled that even though certain issues were unresolved in *Cienega Gardens/Chancellor Manor*, the law was "sufficiently advanced to allow ample guidance for the parties to complete discovery. . . ." Order at 2. The Court also stated that because of the fact-intensive nature of regulatory takings cases, "it would be premature prior to the completion of discovery to stay the instant proceeding." *Id.* The Court invited the parties to revisit the issue of a stay after discovery closed. *Id.*

Subsequent to the Court's May 2005 Order, discovery in this case has closed, and a comprehensive, seventy-seven page decision on liability and damages was issued in *Cienega Gardens/Chancellor Manor*. A final judgment was issued on November 22, 2005, and the government then commenced separate appeals of the judgment on January 20, 2006. *See Cienega Gardens v. United States*, Fed. Cir. No. 06-5051; *Chancellor Manor v. United States*, Fed. Cir. No. 06-5052.[2] The Court's decision in *Cienega Gardens/Chancellor Manor* clarifies how the regulatory takings doctrine should be applied to the statutes at issue and explicitly repudiates numerous fundamental positions upon which the Government relies here. For these reasons, the time is right to stay this case until the Federal Circuit clarifies the law governing these circumstances in the highly similar cases of *Cienega Gardens* and *Chancellor Manor*.

[2] At the same time, a decision is expected from the Federal Circuit in two other closely-related cases: *Independence Park Apartments v. United States*, Fed. Cir. Nos. 05-5034, 05-5035 (addressing various damages issues), and *Anaheim Gardens v. United States*, Fed. Cir. Nos. 01-5011, 01-5012 (addressing ripeness issues).

**DISCUSSION**

Federal courts have the inherent power to control their dockets, and this Court may exercise its discretion to stay proceedings in the interests of justice and judicial economy. *See Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936); *Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997). Judicial economy will be served if the Court stays proceedings here until the Federal Circuit provides direction on the law governing temporary takings of HUD-insured properties pursuant to the statues at issue, the Emergency Low-Income Housing Preservation Act of 1988 ("ELIHPA" or "Title II") and the Low-Income Housing and Resident Homeownership Act of 1990 ("LIHRHA" or "Title VI").

The legal and factual issues in this case are nearly identical to those in the pending *Cienega Gardens/Chancellor Manor* appeals. Legally, the cases involve the same government programs, contract forms, property interests, statutes, and regulations. Moreover, the opinion in *Cienega Gardens/Chancellor Manor* explicitly repudiates a number of the Government's positions on key legal disputes, and the Government takes the same positions in this case. Therefore, the Federal Circuit's decision whether to affirm *Cienega Gardens/Chancellor Manor* will directly affect the law governing this case.

For example, the Court ruled in *Cienega Gardens/Chancellor Manor* that the proper means of addressing the economic impact of the statutes at issue is to measure the plaintiff's actual return on equity against that which the plaintiff would have received but for the taking. *Cienega Gardens*, 67 Fed. Cl. at 475-76. The court rejected the Government's proposed method, which measured the change in fair market values on two hypothetical prepayment dates. *See id.* Here, the Government relies on the very method that Judge Lettow rejected in *Cienega Gardens/Chancellor Manor*, and the Government's expert rejects the method that the Judge held

to be the "best option" for measuring economic impact. *Id.* at 476. (*See* Expert Rep. of Bret M. Dickey ("Dickey Rep.") at 12-16, attached hereto as Ex. A to Affidavit of Mark J. Blando in Support of Motion to Stay.)

The Government's expert in this case also flatly contradicts *Cienega Gardens/Chancellor Manor* on another key point: the valuation date. Upon examining temporary takings like the ones at issue here, the Court measured damages as of the end of the takings period. *See Cienega Gardens*, 67 Fed. Cl. at 483-92. This is also consistent with the Court's ruling in the related case of *Independence Park Apartments v. United States*, 61 Fed. Cl. 692 (Fed. Cl. 2004). But the Government's expert here explicitly rejects the reasoning of both cases, and states that he was "instructed by counsel that, from a legal perspective, the proper date to value a temporary taking is the beginning of the takings period." (Dickey Rep. at 22.) Defendant's expert also departs from the decision in *Cienega Gardens/Chancellor Manor* on the question of what marks the termination of the relevant takings period. (*Id.* at 13 ¶24, 21-22.)

Other key issues on liability and damages that were decided in *Cienega Gardens/Chancellor Manor* include:

- The ripeness of the plaintiffs' takings claims, based on the government's arguments regarding the prepayment procedures set forth in the statutes and regulations at issue. *Cienega Gardens*, 67 Fed. Cl. at 459-62.

- The application of the accord and satisfaction doctrine to those plaintiffs who signed Use Agreements under the statutes at issue. *Id.* at 462-64.

- The character of the government's actions in enacting the statutes at issue. *Id.* at 466-71.

- The relevant legal standard governing the evaluation of the plaintiffs' investment-backed expectations, including the question whether the plaintiffs' subjective expectations are relevant. *Id.* at 471-74.

- Whether damages should be calculated based on plaintiffs' "net rental value" approach or an approach based on what defendant characterizes as a "delay" in prepayment. *Id*. at 483-84. (*See also* Dickey Rep. at 20).

- Various assumptions regarding the calculation of damages, including discount rates, the impact on damages of any equity loans received by the plaintiffs, post-judgment interest rates, and whether simple or compound interest is due. *Cienega Gardens,* 67 Fed. Cl. at 490-93. (*See also* Dickey Rep. at 28-33.)

Economic impact, valuation date, end date for damages, and the other issues detailed above are all key components of the regulatory takings determination, and the law governing these factors will directly impact the Court's ruling here. The pending appeals in *Cienega Gardens* and *Chancellor Manor* squarely present all of these disputed issues – and others – to the Federal Circuit. If the Court of Appeals affirms the decision, the Government's expert reports here are irrelevant on crucial issues. If the Federal Circuit reverses, it may agree with the Government's views in *Cienega Gardens/Chancellor Manor*, or it might adopt a different approach. *See, e.g., Cienega Gardens*, 67 Fed. Cl. at 475 (noting a third possible method for measuring economic impact). These legal questions are crucial to the governing law – and therefore the outcome – in this case. The answers are simply unknowable without having decisions from the Federal Circuit in *Cienega Gardens* and *Chancellor Manor*.

There are also key factual parallels between this case and *Cienega Gardens/Chancellor Manor*, which will give the Federal Circuit's ruling on those appeals added influence here. For example, plaintiffs in both cases are similarly situated in many ways. First, the plaintiff groups here and in *Cienega Gardens/Chancellor Manor* are each comprised of some parties that participated in the Section 236 program and others that participated in the Section 221(d)(3) program. Second, the plaintiff group in each case includes those who signed Use Agreements under the statutes at issue and those who did not. Third, the plaintiff group in each case is

comprised of some members who prepaid their mortgages after the HOPE Act passed and others who extended their participation in the program or sold their properties before that statute was enacted. Finally, the exact same statutes and regulations are at issue in each case, including both the statutes that plaintiffs allege to have effected an as-applied taking of their properties (ELIHPA and LIHPRHA) and the statute that the Government alleges to have restored the prepayment right (HOPE).

With these common legal issues and factual situations, the Federal Circuit's decisions in *Cienega Gardens* and *Chancellor Manor* undoubtedly will influence the law of the circuit governing temporary regulatory takings resulting from ELIHPA and LIHPRHA. If this trial proceeds without the benefit of the Federal Circuit's guidance on the reasoning in *Cienega Gardens/Chancellor Manor*, this Court will spend its time considering positions that the Federal Circuit may be poised to reject.[3] The Court may thus have to revisit its ruling through a remand or retrial, or there may be an appeal that could have been avoided if the parties and the Court had known the governing law from the outset.

This Court's time and resources are best spent trying issues that can be finally resolved. Although staying this case will cause some delay, it will be far less burdensome than the further delay, litigation, uncertainty, and possible retrial that will follow a decision rendered without full guidance on the governing law in a nearly identical situation. This Court will best achieve efficiency and finality by staying these proceedings until the Federal Circuit issues its decision

---

[3] Moreover, the current briefing schedule in the *Chancellor Manor* appeal directly conflicts with the trial schedule in this case, which likely will result in potential delays in the appeal process if this case is not stayed.

on the Government's appeals in *Cienega* and *Chancellor Manor*.[4] Plaintiffs respectfully ask the Court to do so.

Dated: March 17, 2006

Respectfully submitted,

**s/ Jeff H. Eckland**

JEFF H. ECKLAND
Mark J. Blando, Of Counsel
David S. Laidig, Of Counsel
ECKLAND & BLANDO LLP
500 Lumber Exchange
10 South Fifth Street
Minneapolis, Minnesota 55402
Telephone: (612) 236-0160
Facsimile: (612) 236-0179

Jerry W. Snider, Of Counsel
William L. Roberts, Of Counsel
Mark D. Savin, Of Counsel
Michael F. Cockson, Of Counsel
FAEGRE & BENSON LLP
2200 Wells Fargo Center
Minneapolis, MN 55402
Telephone: (612) 766-7000
Facsimile: (612) 766-1600

*Attorneys for Plaintiffs*

M2:20781050.02

---

[4] Plaintiffs also believe that the prospects of settling this case will be much more promising after the current appeals in *Cienega* and *Chancellor Manor* are decided.