**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

APACHE APARTMENTS OF
OWATONNA, *et al*.,

Plaintiffs,

**Case No. 96-700C**
**(Judge Block)**

v.

THE UNITED STATES

Defendant.

---

**PLAINTIFFS' RESPONSE TO DEFENDANT'S**
**MOTION IN LIMINE REGARDING EXPERT OPINION**

Plaintiffs Apache Apartments of Owatonna, a Limited Partnership, *et al*., submit this response to the Motion in Limine Regarding Expert Opinion filed by defendant on March 15, 2006. In that motion, defendant seeks to preclude plaintiffs from presenting at trial any opinions expressed in the First Amended Expert Report of George R. Karvel, Ph.D., dated March 14, 2006. Given that Dr. Karvel's report was amended in a timely manner based on subsequent precedent that directly impacts his opinions in this matter, and that defendant will suffer no discernable prejudice in responding to the amended report, defendant's motion should be denied.

**BACKGROUND**

Plaintiffs served the Expert Report of George R. Karvel, Ph.D., on defendant on March 8, 2005, in compliance with the Court's then-existing scheduling order. *See* Order of October 7, 2004. Dr. Karvel was then deposed by counsel for defendant at defendant's offices in Washington, D.C. for a full day on May 23, 2005.

At the time that Dr. Karvel prepared his original report in this matter and was deposed, the status of this case and several related cases was unsettled. First, the closely-related case of *Chancellor Manor v. United States*, No. 98-39C – another case in which Dr. Karvel testified as an expert on behalf of the plaintiffs – had recently been tried in November and December 2004. That case was consolidated for trial with another related case, *Cienega Gardens v. United States*, No. 94-1C. Second, yet another closely-related case, *Independence Park v. United States*, Fed. Cir. Nos. 05-5034, 05-5035, was on appeal to the Federal Circuit. The expected decisions in all of these cases were anticipated to have a direct impact on the opinions and testimony to be offered by Dr. Karvel in this matter. Third, given the fact that the parties were awaiting decisions from this Court and the Federal Circuit in these related cases, the plaintiffs had moved to stay this case pending the issuance of the expected decisions.[1]

Given these circumstances, Dr. Karvel expressly stated in his report that he would amend and update the report as necessary to conform to the expected decisions in the related cases, as well as based on any additional information obtained. Nonetheless, Dr. Karvel presented in his report a complete analysis for each of the properties at issue, together with a detailed narrative explaining his methodology. Dr. Karvel's "discounted cash flow" analysis for each property incorporated assumptions as to rents, vacancies, rent increases, expenses, expense increases, debt service, beginning and end dates, discount rates, and interest rates. Dr. Karvel also conducted a "return on equity" analysis for each property to evaluate the economic impact on the plaintiffs of the government's actions. Defendant questioned Dr. Karvel at length regarding the bases for his assumptions and methods during his subsequent deposition on May 23, 2005.

---

[1] In response to that motion, the Court ordered the parties to complete discovery but invited either party to revisit the issue of a stay thereafter. *See* Order of May 2, 2005 at 2. Plaintiffs have since filed a renewed motion to stay on March 17, 2006, based on the fact that the *Chancellor Manor* and *Cienega Gardens* cases are now on appeal to the Federal Circuit.

Plaintiffs confirmed in a Joint Status Report filed with the Court on June 8, 2005 that Dr. Karvel planned to amend his report after the anticipated decisions in related cases were issued:

> Plaintiffs filed their expert report in this matter on March 8, 2005 in accordance with the Court's scheduling order. However, based in large part on the expected upcoming decisions in related cases, plaintiffs intend to submit an amended report prior to the trial of this matter. Plaintiffs would not object to their expert witness being re-deposed after the amended report is completed, should defendant desire to do so.

Joint Status Report of June 8, 2005 at 3, n.2.

The highly-anticipated decision of the Court of Federal Claims in the consolidated cases of *Cienega Gardens* and *Chancellor Manor* was issued on August 30, 2005. *See Cienega Gardens v. United States*, 67 Fed. Cl. 434 (Fed. Cl. 2005) (Lettow, J.). In that decision, the Court ordered the parties to submit revised damages calculations for each property in conformance with the Court's decision. *Id*. at 491-92, 494 (requesting that the parties prepare supplemental damages calculations "using the parameters determined by the court" as set forth in the opinion). The parties did so, and judgment was issued on September 30, 2005. However, the *Chancellor Manor* plaintiffs moved to amend the judgment, which was granted in part, resulting in a subsequent judgment issued on November 22, 2005. Dr. Karvel submitted additional expert reports in connection with the proceedings leading up to both judgments, and testified at an evidentiary hearing on the plaintiffs' motion to amend the judgment on November 15, 2005. Throughout this process, Dr. Karvel updated and amended his methodology and assumptions to conform to various rulings made by the Court, including assumptions as to discount rates, interest rates, end dates, and lost revenue during the period of conversion to market.

The November 22, 2005 judgment of the Court was appealed by defendant on January 20, 2006, and the two cases are now on appeal to the Federal Circuit. *See Cienega Gardens v.*

*United States*, Fed. Cir. No. 06-5051; *Chancellor Manor v. United States*, Fed. Cir. No. 06-5052. During the same time period, Dr. Karvel prepared his expert report in yet another related case, *Sheyenne Development v. United States*, No. 98-755C. In that report, Dr. Karvel followed essentially the same methodology and assumptions that he presented in the post-judgment proceedings in *Chancellor Manor*, which resulted in the final judgment currently on appeal. Dr. Karvel was then deposed for a full day in the *Sheyenne* case on March 17, 2006, during which his opinions and assumptions were fully explored by defendant.

After preparing his reports in *Chancellor Manor* and *Sheyenne Development*, Dr. Karvel completed his amended report in this case. Again, Dr. Karvel employed essentially the same methodology and assumptions that he applied in *Chancellor Manor* and *Sheyenne Development.* Plaintiffs submitted Dr. Karvel's amended report to defendant on March 14, 2005 and included the report on the preliminary exhibit list that plaintiffs provided to defendant on that date.

As plaintiffs stated in the Joint Status Report filed on June 8, 2005, plaintiffs do not object to Dr. Karvel being deposed based on his amended report. In addition, upon defendant's request, plaintiffs have offered to cover the expenses incurred in connection with any second deposition of Dr. Karvel. Plaintiffs confirmed that offer on March 31, 2006, stating that they would "compensate defendant for any out-of-pocket costs incurred by defendant in connection with deposing Dr. Karvel based on his amended expert report." Affidavit of Mark J. Blando ("Blando Aff."), attached hereto, ¶ 8 & Ex. A.

## DISCUSSION

### A. Defendant Will Suffer No Prejudice From Permitting Dr. Karvel To Testify At Trial Regarding His Amended Report.

Defendant already is well-versed in the methodology and assumptions that underlie Dr. Karvel's amended report. Dr. Karvel's original report in this matter placed defendant on notice

of the basic approach and methodology that he has used to calculate the damages suffered by each plaintiff. Defendant became familiar with that methodology even prior to Dr. Karvel's work in this case, as a result of Dr. Karvel's original and amended report, depositions, and trial testimony in the *Chancellor Manor* case. As a result of the subsequent rulings in *Chancellor Manor*, Dr. Karvel modified and refined his methodology, resulting in the analysis set forth in his recent reports in *Chancellor Manor* and *Sheyenne Development*. Dr. Karvel then applied that same methodology in preparing his amended report in this case.

Thus, defendant is intimately familiar with the foundations for, and the assumption applied in, Dr. Karvel's amended report. Defendant has also had ample opportunity to explore Dr. Karvel's opinions and methods. Dr. Karvel has been deposed by defendant once in this case, twice in *Chancellor Manor*, and once in *Sheyenne Development*, and was cross-examined by defendant at both the trial and the post-judgment proceedings in *Chancellor Manor*. As a result, defendant's assertion that it will be prejudiced by a lack of opportunity to fully evaluate Dr. Karvel's methodology rings hollow. *See Hansen Bancorp, Inc. v. United States*, 51 Fed. Cl. 737, 738 (2002) (allowing amendment of expert report over defendant's objection, noting that the report did not present "an entirely 'new' theory of damages") (citing *Admiral Fin. Corp. v. United States*, No. 94-489C (Fed. Cl.) (Order of Jan. 31, 2002); *First Fed. Sav. Bank or Hegewisch v. United States*, No. 93-162C (Fed, Cl.) (Order of Oct. 17, 2001); and *Castle v. United States*, No. 90-1291C (Fed. Cl.) (Order of Dec. 11, 1998)).

In addition, plaintiffs notified defendant of their intention to submit an amended report from Dr. Karvel several times, including in Dr. Karvel's original report, during his deposition, in the Joint Status Report filed by the parties on June 8, 2005, and through numerous conversations

between counsel for the parties. *See* Blando Aff., ¶¶ 3-5. Thus, there is no hint of surprise to defendant or bad faith on the part of plaintiffs.

Finally, any arguable prejudice to defendant has been eliminated by plaintiffs' offer to permit defendant to redepose Dr. Karvel based on his amended report. There is ample time for such a deposition to occur, in that the trial of this matter will not commence until June 12, 2006. Indeed, the parties already have agreed to conduct further depositions in this matter based on new witnesses that were identified on the witness lists exchanged by the parties on March 14, 2006. At least one of those depositions will go forward in Minneapolis, which is where Dr. Karvel's second deposition would take place. *See* Blando Aff., ¶ 9. Furthermore, plaintiffs have agreed to cover any out-of-pocket costs incurred by defendant in connection with redeposing Dr. Karvel. Thus, defendant will suffer no prejudice as a result of Dr. Karvel's amendment of his report. *See Hansen Bancorp, Inc.*, 51 Fed. Cl. at 738*; Wechsler v. Macke Int'l Trade, Inc.*, 221 F.R.D. 619, 623 (C.D. Cal. 2004) (allowing second supplemental expert report served on defendant three weeks before trial, where initial report placed defendant on notice that the expert intended to testify on the matters contained in the supplemental report and plaintiff offered to permit defendant to redepose the expert); *City of Wichita v. Aero Holdings, Inc.*, 2001 U.S. Dist. LEXIS 1616 (D. Kan., Jan. 18, 2001) (allowing amended expert report and requiring plaintiff to cover costs of supplemental deposition to "ameliorate any prejudice claims" by defendant).

**B. Justice Requires That Dr. Karvel's Amended Report Be Presented At The Trial Of This Matter.**

The damages suffered by each plaintiff, and the related question of the economic impact of the government's actions upon each plaintiff, are key considerations in the regulatory takings analysis. There should be no question that those subjects should be presented at trial based on the most updated and accurate methodology, and one that takes relevant precedent into

consideration. In this case, the subsequent precedent from *Chancellor Manor* and *Cienega Gardens* should be accounted for in plaintiffs' analysis, as anticipated by Dr. Karvel and by plaintiffs.[2] As a result, Dr. Karvel's amended report in this matter was prepared promptly after his analysis was further developed through the post-judgment proceedings in *Chancellor Manor* and the subsequent expert discovery in *Sheyenne Development*.

Indeed, plaintiffs are obligated under Rule 26(e) to supplement and amend their discovery responses, including expert reports. *See* Rule 26(e) of the Rules of the Court of Federal Claims (parties are "under a duty to supplement or correct" expert disclosures under various circumstances, including where "the party learns that in some material respect the information disclosed is incomplete or incorrect . . . ."). By submitting Dr. Karvel's amended expert report, which reflects updates to his analysis based on his work and court decisions in related cases, plaintiffs are complying with their discovery obligations.

Allowing Dr. Karvel to testify at trial based on his amended report will ensure that plaintiffs' damages are presented in the most accurate and thorough manner. There should be no question that plaintiffs' evidence on damages, and the Court's ultimate decision in this matter, should be based on the best methodology and the best information available, in conformance with existing precedent. Accordingly, given the lack of prejudice to defendant, the Court should permit Dr. Karvel to testify at the trial of this matter regarding the matters set forth in both his original and amended expert reports.

---

[2] Given that those cases are currently on appeal, there of course remains the possibility that applicable precedent will be further refined or even altered. For that reason, as noted above, plaintiffs have moved to stay the trial of this matter pending the outcome of those appeals. Regardless of whether this case is stayed, the methodology presented at trial should be based on the best information available, taking relevant precedent into account to the maximum extent possible.

## CONCLUSION

For the reasons set forth above, plaintiffs respectfully request that defendant's Motion in Limine Regarding Expert Opinion be denied and that plaintiffs be permitted to present at trial the matters and opinions contained in the First Amended Expert Report of George R. Karvel, Ph.D., dated March 14, 2006.

Dated: April 3, 2006

**Filed Electronically**

Respectfully submitted,

**s/ Jeff H. Eckland**
JEFF H. ECKLAND
Mark J. Blando, Of Counsel
ECKLAND & BLANDO LLP
500 Lumber Exchange
10 South Fifth Street
Minneapolis, Minnesota 55402
Telephone: (612) 236-0160
Facsimile: (612) 236-0179

Jerry W. Snider, Of Counsel
William L. Roberts, Of Counsel
Michael Cockson, Of Counsel
Mark D. Savin, Of Counsel
FAEGRE & BENSON LLP
2200 Wells Fargo Center
Minneapolis, MN 55402
Telephone: (612) 766-7000
Facsimile: (612) 766-1600

*Attorneys for Plaintiffs*