APPENDIX

TABLE OF CONTENTS

Transcript of Deposition of Dr. George R. Karvel, May 23, 2005 . . . . . . . . . . . . . . . . . . . . . . . . . 1

Facsimile Transmission Page, Timothy P. McIlmail to Jeff Howard Eckland, Apr. 3, 2006 . . . . . . . . . . . . . . . . 9

Letter of Timothy P. McIlmail to Jeff Howard Eckland, Apr. 3, 2006 . . . . . . . . . . . . . . . . . . . . . . . . 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - X

Apache Apartments of Owatonna, :
A Limited Partnership :
Plaintiff, : No. 96-700C
v. :
UNITED STATES, :
Defendant. :

- - - - - - - - - - - - - - - - X

Washington, D.C.
Monday, May 23, 2005

Deposition of DR. GEORGE R. KARVEL, a witness herein, called for examination by counsel for Defendant in the above-entitled matter, pursuant to notice, the witness being duly sworn by SUSAN L. CIMINELLI, a Notary Public in and for the District of Columbia, taken at the offices of Department of Justice, 1100 L Street, N.W., Washington, D.C., at 9:25 a.m., Monday, May 23, 2005, and the proceedings being taken down by Stenotype by SUSAN L. CIMINELLI, CRR, RPR, and transcribed under her direction.

Certified Copy

Q. Now, I understand that based upon your assignment, you have prepared an incomplete report, is that correct?
A. That is correct.
Q. An incomplete report?
A. I would say --
MR. BLANDO: Objection. I think that calls for speculation. It's vague in terms of what is meant by incomplete.
THE WITNESS: I prepared a report that I do not believe is in its final form, and that would require updating and modification at some point between now and the trial.
BY MR. AUSTIN:
Q. Are you aware that discovery is closed today?
A. No.
Q. Do you know what that means?
A. Only in the general sense.
Q. When you say between now and the time of trial, why haven't you completed your report before now?
A. I haven't had time.
Q. Is that the only reason?
A. Fundamentally, that's the reason. Yes. I

haven't been asked to complete it.

Q. You have not been asked or you have?

A. I have not.

Q. You have not been asked to complete your report?

A. Not beyond what is already done, no.

MR. BLANDO: I'm going to object to the last couple questions as mischaracterizing the evidence in that Dr. Karvel explains the other reasons in his report as to the nature of what he intends to do, and what he has done so far, including the fact that there was a motion to stay pending at the time his report was prepared.

MR. AUSTIN: I understand, Mr. Blando, that you are from Minnesota. I don't know state practice in Minnesota, but generally in federal court, we do not allow talking objections. You just simply state the basis of your objection, and we can deal with it, but I would ask you to refrain from talking objections.

MR. BLANDO: That was the basis for my objection.

BY MR. AUSTIN:

Q. Now, getting back to the -- is there a difference between preliminary and incomplete?

A. Well, conceptually, financially it would be when they arrive at the same point that they would have been had they been allowed to prepay originally.
Q. In other words, if at some point they are allowed to prepay.
A. Pick any point you want hypothetically, when that point exists and they are allowed to prepay, they could then begin the conversions to a market rent, at which point they would arrive at a complete converse, and they would be at the same financial point in terms of the rents generated and profits earned had they been allowed to convert in some prior period. And so in which case it just terminated.
Q. Is there a particular model that is better than the other?
A. I prefer discounted cash flow. It's preferential.
Q. Is there a consensus?
A. I would say that consensus would probably agree with me, but I would also say that there are some who would disagree. I don't think it represents -- it's just a judgment on my part, but I don't think that's a majority of analyst opinions.
Q. Now, as far as you can recall, when you

prepared your preliminary report, which work is still needed to be done, do you recall if you had determined the damages for this damage period that you were talking about?

A. In discussions with Mr. Eckland and Mr. Blando, there were several different damage points that I believe we utilized, some in which prepayment was permitted, some of which I think a, maybe that was what it was called, a use agreement. I don't really understand it. I don't recall clearly.

There may have been some other point in time, too. There might have been the date of a passage of some kind of bill. The question was asked as to the period. There was some debate as to what the appropriate termination would be. I used those termination points that were given to me at the time the damages were prepared.

I have not at this juncture, nor am I prepared to give an opinion as to where that would end for each of these properties. It's one of the things that need to be clarified in my mind at this point in time.

Q. And you don't plan to do that until you're asked by Mr. Blando and Mr. Eckland?

A. No. I do not. First of all, I have to know that the case -- I think there was a motion to stay or continue this trial in Apache. And I understand it's only fairly recently that that was decided that it would not be continued. So the first opportunity potentially to do anything would have been when that order was given.
The other problem is I've been busy with other clients and I have had no time, no opportunity, no life for the last couple of months. And so it's not an unwillingness. It's just simply a matter of having the time to allocate which I'm hoping that in the next week this is going to come to an end after my fishing trip to Canada.
Q. Dr. Karvel, I'm more than a little curious about this meeting you had with Mr. Blando and Mr. Eckland. Was it one meeting, two meetings?
A. There is a variety of plaintiffs that we represent, a variety of cases and I communicate with them -- well, when we are communicating. I don't speak with them maybe a month or two at a time. Recently, I think I'm married to them.
Q. In particular, you had mentioned that Mr. Blando and/or Mr. Eckland told you about several termination points for a damage period.

own opinion, but then I may be constrained by some instruction as regard to the law which we'll follow.

And so essentially, there is a substantial amount of work that remains to be done.

Q. So what purpose or effect does your preliminary report have at this point if, as you testified, you have to do substantial work to complete it?

A. If the assumptions in the report as it stands happen to be close to or similar to ones that would be in the final report, the answer may be reasonably, a reasonable portrayal or accounting for the financial losses of the plaintiffs.

Q. But we would only know that if you do the supplemental report to completion?

A. That's correct. What's there is only as good as the rental data and operating expense data and other information that's employed and disclosed in the report.

Q. Now, why weren't you able to consider all of the rent data that you feel is appropriate when you wrote your report?

A. Time.

Q. How much time did you have?

A. Not enough.

## *CERTIFICATE OF REPORTER*

***UNITED STATES OF AMERICA ) ss.:***
***DISTRICT OF COLUMBIA )***

I, **SUSAN L. CIMINELLI, RPR, CRR,** the officer before whom the foregoing deposition was taken, do hereby certify that the witness whose testimony appears in the foregoing deposition was duly sworn by me; that the testimony of said witness was taken by me to the best of my ability and thereafter reduced to typewriting under my direction; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this deposition was taken, and further that I am not a relative or employee of any attorney or counsel employed by the parties thereto, nor financially or otherwise interested in the outcome of the action.

*Notary Public in and for*
*the District of Columbia*

*My commission expires: 11/30/2006*

****************** -COMM. JOURNAL- ********************** DATE APR-03-2006 ***** TIME 12:59 *********

MODE = MEMORY TRANSMISSION START=APR-03 12:58 END=APR-03 12:59

FILE NO.=683

| STN NO. | COMM. | ABBR NO. | STATION NAME/TEL NO. | PAGES | DURATION |
|---|---|---|---|---|---|
| 001 | OK | ≡ | 916122360179 | 002/002 | 00:00:41 |

-DOJ CIVIL DIVISION -

****************************************** -202 514 7969 - ***** - 202 514 7969- *********

FILE

**IMPORTANT:** This facsimile is intended only for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, or otherwise protected from disclosure under applicable law. If the reader of this transmission is not the intended recipient or the employee or agent responsible for delivering the transmission to the intended recipient, you are hereby notified that any dissemination, distribution, copying or use of this transmission or it's contents is strictly prohibited. If you have received this transmission in error, please notify us by telephoning and return the original transmission to us at the address given below.

**FROM:** Department of Justice
Civil Division

Date: 4/3/06

Fax Nos.

| | | |
|---|---|---|
| | 7th Floor: | (202) 305-7644 |
| | 8th Floor: | (202) 305-3291 |
| | 10th Floor: | (202) 514-8640 |
| ✔ | 11th Floor: | (202) 514-7969 |
| | 11th Floor: | (202) 514-7965 |
| | 12th Floor: | (202) 307-0972 |
| | 12th Floor: | (202) 514-8624 |

Voice No.

**SENT BY:** Timothy McIlmail

**TELEPHONE NO.** 202-307-6289

**TO:** Jeff Howard Eckland

**TO:** 612-236-0179

**NUMBER OF PAGES SENT (INCLUDING COVER PAGE):** 2

**SPECIAL INSTRUCTIONS:**

McIlmail

**U.S. Department of Justice**

Civil Division

DJ# 154-96-700
BMS:TPMcIlmail

Telephone: (202) 307-0361
Facsimile: (202) 514-7965

*Washington, D.C. 20530*

April 3, 2006

TO BE SENT BY MAIL AND FACSIMILE

Jeff Howard Eckland
Eckland & Blando LLP
500 Lumber Exchange
10 South Fifth Street
Minneapolis, MN 55402
Fcsimile: (612) 236-0179

FILE

Re: Apache Apartments v. United States, No. 96-700C (Fed. Cl.)

Dear Mr. Eckland:

We have received Mark Blando's March 31, 2006 email informing us that plaintiffs agree "to compensate defendant for any out-of-pocket costs incurred by defendant in connection with deposing Dr. Karvel based on his amended report." Please understand that our opposition to the use of any opinion of Dr. Karvel not reported by the Court's March 8, 2005 deadline is not based solely upon the expense to the Government of redeposing Dr. Karvel.

Very Truly Yours,

Timothy P. McIlmail

Timothy P. McIlmail
Attorney
Commercial Litigation Branch