**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

APACHE APARTMENTS OF OWATONNA, *et al*.,

Plaintiffs,

**Case No. 96-700C**
**(Judge Block)**

v.

THE UNITED STATES,

Defendant.

---

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S SECOND MOTION IN LIMINE**

**INTRODUCTION**

In its second motion in limine, the Government would have this Court turn back the clock not just ten years, but nearly seventy. At a minimum, the Government asks this Court to ignore the last ten years since the Complaint was filed, during which time the parties engaged in active discovery and the Government actually uncovered – or at least had the opportunity to uncover – *all* of the evidence that it now seeks to exclude from trial. But in asking the Court to bar such evidence simply because it was not identified in the Complaint, the Government seeks to turn back the clock to December 19, 1937 – before the Federal Rules were adopted – to a world of demurrers and code pleading, when plaintiffs were required to plead detailed, ultimate facts and neither party had the benefit of liberal discovery. With the Federal Rules' well-established notice pleading standard, however, the Complaint need only include a "short and plain" statement of the claim, with factual development and refinement to occur through discovery. The evidence that the Government seeks to exclude uniformly consists of specific facts that further bolster plaintiffs' breach of contract and Fifth Amendment takings claims. Because the

Federal Rules do not require that such details be included in the pleadings, the Government's second motion in limine should be denied.

**BACKGROUND**

Plaintiffs commenced this action on October 31, 1996. In their complaint, plaintiffs asserted claims for both breach of contract and a Fifth Amendment taking of property. The complaint, among other things, (1) described the background of the relevant housing programs; (2) detailed the terms of the parties' contracts, including the key prepayment right at issue; (3) described the nature and provisions of the legislative acts that abridged the plaintiffs' prepayment rights, including both the Emergency Low Income Housing Preservation Act of 1987 ("ELIHPA" or "the 1988 Legislation") and the Low Income Housing Preservation and Resident Homeownership Act of 1990 ("LIHPRHA" or "the 1990 Legislation"); and (4) explained the impact of that legislation on the plaintiffs and their properties, including the damages suffered by the plaintiffs as a result thereof. (*See* Complaint for Breach of Contract and Just Compensation, ¶¶ 10-41 (Oct. 31, 1996).)

Plaintiffs amended their complaint on November 27, 1996, to add two additional parties, and the Government answered on March 31, 1997.[1] Plaintiffs then moved for partial summary judgment on November 26, 1997. In their moving papers, which included an extensive brief and proposed findings of uncontroverted fact, plaintiffs provided further explanation of their claims and the facts supporting them. (That motion was later withdrawn based on subsequent controlling precedent issued by the Federal Circuit.) In addition, during the same time period,

---

[1] The Government did not, prior to filing its answer or at any point thereafter, move to dismiss the complaint for failure to state a claim under Rule 12(b)(6) or move for a more definite statement under Rule 12(e).

numerous closely-related cases were filed with the Court asserting nearly identical allegations. *See, e.g*., *Cienega Gardens v. United States*, No. 94-1C; *Anaheim Gardens v. United States*, No. 93-655C; *Sheyenne Development v. United States*, No. 96-755C; *Chancellor Manor v. United States*, No. 97-39C.

After the stay requested by the Government expired, the parties engaged in extensive fact discovery in this matter from February 2004 through January 2005. *See* Order of Feb. 24, 2004. During discovery, the Government served numerous requests for production of documents and interrogatories on plaintiffs. In response, plaintiffs produced more than 8,000 pages of documents. The Government also conducted Rule 30(b)(6) depositions of each plaintiff. Plaintiffs produced up to two Rule 30(b)(6) deponents for each plaintiff entity, for a total of seven fact witnesses (some of whom provided testimony regarding more than one property). Through these depositions and written discovery requests, the Government had every opportunity to fully explore the facts supporting plaintiffs' claims. These facts, of course, included events that occurred both before and after the date that plaintiffs commenced this action.

The parties also engaged in extensive expert discovery. The parties named a total of four expert witnesses, all of whom produced expert reports and deposition testimony. As part of the expert discovery process, an appraiser retained by the Government conducted site visits of each property at issue and prepared an appraisal report for each.

Finally, while discovery was ongoing in this case, defendant was litigating in related cases many of the very matters that it seeks to exclude any evidence of at the trial of this matter. For example, in November and December 2004, a consolidated trial was held in the cases of *Chancellor Manor* and *Cienega Gardens.* Those cases, which involved many of the same

attorneys who are appearing here for both parties, involved almost identically-situated plaintiffs and presented issues regarding:

- The enactment and application to plaintiffs of the HOPE statute,
- The enactment and application to plaintiffs of the ELIHPA statute, including the notice requirement contained therein regarding the termination of Housing Assistance Payment ("HAP") contracts,
- The impact of HAP contracts entered into by the plaintiffs, and
- The statute passed in 1998 that clarified the confusion created by the HOPE statute regarding the right of owners to prepay.

*See Cienega Gardens v. United States*, 67 Fed. Cl. 434, 440-42, 444-46, 466-69, 479-83 (2005).

Plaintiffs timely submitted their pretrial filings in this matter, including their Proposed Findings of Fact, on March 28, 2006. All of the facts set forth in plaintiffs' filings concerned matters that existed during the time that discovery was pending in this matter. Accordingly, all of the facts relied upon by plaintiffs are facts that the Government had every opportunity to learn about through the discovery process, and either was specifically informed about or simply chose not to investigate.

**DISCUSSION**

The Government's motion in limine borders on the absurd. Nearly ten years after suit was filed, the Government seeks to exclude evidence on the ground that it was not originally pled in the Complaint. But the Government cites no authority for its novel proposition that a fact left unpled may be excluded from trial. Instead, the Government's position runs counter to a bedrock principle of our system of justice: "A pleading which sets forth a claim for relief . . . shall contain . . . a *short and plain* statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2) (emphasis supplied); *see also* RCFC 8(a)(2) (same); *Te-Moak Bands of W. Shoeshone Indians v. United States*, 948 F.2d 1258, 1260 n.4 (Fed. Cir. 1991) (where Federal Rule of Civil Procedure and Rule of Court of Federal Claims are similar, case law construing the Federal Rules may be used to interpret the RCFC).

Accordingly, a claimant need not "set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swiekiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). The Federal Rules "restrict the pleadings to the task of general notice-giving and invest the deposition-discovery process with a vital role in the preparation for trial." *Hickman v. Taylor*, 329 U.S. 495, 500-01 (1947). Here, the amended complaint gave the Government ample notice, which it used to engage in vigorous discovery.

The evidence that the Government seeks to exclude consists primarily of events post-dating the Complaint, as the Government complains that plaintiffs failed to amend the pleadings to incorporate new factual developments further bolstering and contributing to their pre-existing claims for breach of contract and Fifth Amendment takings of their properties. Such evidence includes: (1) regulatory interpretation and implementation of the 1996 HOPE statute; (2) enactment and application of the 1998 legislation that clarified the right to prepay; and (3) the ultimate disposition of each property, including sales, prepayments with conversion to market rents, and signing of Use Agreements. Also targeted for exclusion is evidence as to certain property sales and Government conduct delaying other sales or attempts to exit the Federal housing program.

The Government does not (because it cannot) assert that the evidence it seeks to exclude was not discoverable over the course of discovery, including depositions, document productions, interrogatories and requests for admissions. Nor (again because it cannot) does the Government assert that it was actually prejudiced by the omission of the evidence in question from the Complaint. Indeed, it is well-established that a complaint need not plead evidence or legal theories. *See*, *e.g.*, *Williams v. Seniff*, 342 F.3d 774, 792 (7th Cir. 2003); *McGowne v. Challenge-Cook*, 672 F.2d 652, 665 (8th Cir. 1982); *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977). Courts routinely have held that a complaint need not allege all of the facts supporting its claims for relief, and, in fact, need not even specifically plead every element of a cause of action. *Castillo v. Norton*, 219 F.R.D. 155, 160 (D. Ariz. 2003) (collecting cases from, in part, the D.C., Sixth and Eleventh Circuits); *see also Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) (holding that complaint sufficiently pled racial discrimination by stating, "I was turned down for a job because of my race").

In this case, the evidence at issue consists of additional facts that further define the scope of the Government's breach and the ensuing damages. The Federal Rules' notice pleading standard did not require plaintiffs to continually amend and re-file the Complaint to account for each new development or fact uncovered in discovery. "Effective notice pleading should provide the defendant with a basis for assessing the initial strength of the plaintiff's claim, for preserving relevant evidence, for identifying any related counter- or cross-claims, and for preparing an appropriate answer." *Sprint Communications Co. v. Theglobe.com, Inc.*, 233 F.R.D. 615, 619 (D. Kan. 2006) (quoting *Qarbon.com, Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046 (N.D. Cal. 2004)). There is no question that the Complaint long ago accomplished these goals,

with the remaining development of the facts and refinement of the issues for trial left for discovery.

## CONCLUSION

In short, this case has proceeded just as the framers of the Federal Rules intended. Plaintiffs served a complaint that gave the Government notice of the nature of their claims and the relief sought. The parties then engaged in liberal discovery, and now they are preparing for trial. The Government would have this Court revert to the ancient regime of code pleading, far pre-dating the Federal Rules, under which plaintiffs were required to set forth all facts constituting the cause of action at the very outset of the litigation. *See Castillo*, 219 F.R.D. at 159 (contrasting Federal Rules' notice pleading with pre-existing complex technical requirements) (collecting cases). "Under the modern federal rules, however, pleadings 'are not an end in themselves,'" and discovery and trial on the merits take precedence over pleading practice. *Id.* at 159-60 (quoting 5 Wright & Miller, Federal Practice and Procedure § 1182, at 13). Accordingly, the Government's second motion in limine should be denied.

Dated: April 27, 2006

**Filed Electronically**

Respectfully submitted,

**s/ Jeff H. Eckland**
JEFF H. ECKLAND
Mark J. Blando, Of Counsel
ECKLAND & BLANDO LLP
500 Lumber Exchange
10 South Fifth Street
Minneapolis, Minnesota 55402
Telephone: (612) 236-0160
Facsimile: (612) 236-0179

Jerry W. Snider, Of Counsel
William L. Roberts, Of Counsel
Mark D. Savin, Of Counsel
Michael F. Cockson, Of Counsel
FAEGRE & BENSON LLP

2200 Wells Fargo Center
Minneapolis, MN 55402
Telephone: (612) 766-7000
Facsimile: (612) 766-1600

*Attorneys for Plaintiffs*

M2:20792397.02